United States District Court
Southern District of Texas
**ENTERED**
October 07, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JULIO AYALA MARQUEZ,<br>"Petitioner," | § | |
| v. | § | Civil Action No. 1:26-cv-00562 |
| WARDEN, PORT ISABEL DETENTION CENTER, *et al.*,<br>"Respondents." | § | |

**ORDER**

Before the Court is Petitioner's "Petition for Writ of Habeas Corpus" (Dkt. No. 1) ("Petition"); Petitioner's "Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 3) ("MTRO"); Respondents' "Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment" (Dkt. No. 9) ("MSJ"); Respondents' "Supplement to Dkt. No. 9" (Dkt. No. 10) ("Supplement"); and "Petitioner's Response in Opposition to Respondents' Motion for Summary Judgment and Supplement" (Dkt. No. 11) ("Reply"). For these reasons, the Petition (Dkt. No. 1) is hereby **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Petitioner is a Cuban national who entered the United States without inspection on May 4, 1980. Dkt. No. 9-1 at 1. He is subject to a final order of removal dated May 27, 2010. *Id.* at 2. On August 30, 2010, Respondents released Petitioner from civil immigration custody under an Order of Supervision ("OSUP"). *Id.*; *see also* Dkt. No. 1-2.

Petitioner remained under that OSUP for about fifteen years, until immigration officials arrested him on June 5, 2025. Dkt. No. 9-1 at 2. Since then, Petitioner has remained detained at the Port Isabel Detention Center in Los Fresnos, Texas. *Id.* at 1.

## II. LEGAL STANDARD

### A. CLAIMS OF PROLONGED DETENTION UNDER *ZADVYDAS V. DAVIS*, 533 U.S. 678 (2001).

When an alien has been ordered removed, 8 U.S.C. § 1231 ("§ 1231") requires the Attorney General to remove him from the United States within a period of 90 days. 8 U.S.C § 1231(a)(1). During this 90-day "removal period," the alien must be detained. 8 U.S.C. § 1231(a)(2).

If an alien has not been removed within the 90-day period, detention shifts from § 1231(a)(2) to § 1231(a)(6), under which the government "may" prolong detention "beyond the removal period." 8 U.S.C. § 1231(a)(6). But § 1231(a)(6) does not give the government license to detain indefinitely. In *Zadvydas*, the Supreme Court read a limit into such detention to a period "reasonably necessary to bring about [the] alien's removal from the United States." *Zadvydas,* 533 U.S. at 689. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699 (citations omitted). To facilitate "uniform administration in federal courts," the Supreme Court recognized a 6-month "presumptively reasonable period of detention." *Id.* at 701. If a petitioner seeks release from detention during the presumptively reasonable 6-month period, his claim is premature. *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

To gain relief under *Zadvydas*, a petitioner must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. For the reviewing habeas court, the point of this inquiry is to assess how long "detention" can remain "reasonably necessary to secure removal" and advance the "statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699.

### B. Tolling of the 90-Day Removal Period under 8 U.S.C. § 1231(a)(1)(C).

Section 1231(a)(1)(C) provides that the removal period "shall be extended beyond a period of 90 days" if an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

## III. DISCUSSION

### A. Petitioner's alleged failure to proactively seek removal does not Toll the 90-day removal Period under § 1231(a)(1)(C).

Respondents first contend that Petitioner's detention remains lawful because he has not demonstrated efforts of his own to comply with the removal order. Dkt. No. 9 at 4. Respondents insist that "the removal period should be tolled to account for Petitioner's refusal to cooperate with his removal." *Id.* at 5. The Court disagrees.

Petitioner's removal order became final on May 27, 2010. Dkt. No. 1 at 1; Dkt. No. 9-1 at 2. Thus, absent an extension under § 1231(a)(1)(C), his 90-day removal period expired on or about August 25, 2010. Respondents identify no conduct by Petitioner that obstructed his removal during

that period. *See* Dkt. 9 at 4-5. Instead, Respondents rely on Petitioner's refusal to sign a "Warning for Failure to Depart, Form I-229(a)" and accompanying instruction sheet several times between August and October 2025[1] and January and June 2026. *Id.*; *see also* Dkt. No. 9-1 at 3-5.

That conduct occurred fifteen years after Petitioner's statutory removal period expired. Section 1231(a)(1)(C), by its terms, provides for an extension of "the removal period … beyond a period of 90 days" *See* 8 U.S.C. §§ 1231(a)(1)(A), (C). Respondents therefore cannot rely on conduct occurring years after that period expired to retroactively suspend it, and effectively revive a 90-day statutory period that has long since expired. Respondents identify no authority supporting their position. In fact, Respondents acknowledge that Petitioner's present detention arises under § 1231(a)(6), rather than § 1231(a)(2). *See* Dkt. No. 9 at 4. The Court therefore declines to treat Petitioner's alleged noncooperation in 2025 and 2026 as tolling a statutory removal period that expired in 2010,[2] and thus turns to whether detention remains reasonable under *Zadvydas*.

### B. PETITIONER HAS SHOWN THERE IS NO SIGNIFICANT LIKELIHOOD OF REMOVAL IN THE REASONABLY FORESEEABLE FUTURE, AND RESPONDENTS HAVE NOT REBUTTED THAT SHOWING.

Petitioner has been detained since June 5, 2025, well beyond the 6-month presumptive period. See *Zadvydas*, 533 U.S. at 701. He has also provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's removal order became final in 2010, yet the Government has not completed removal in the sixteen years since. Indeed, after the initial removal period expired, Respondents released petitioner under an OSUP, where he remained for nearly fifteen years before his redetention in June 2025. The Government's efforts since Petitioner's second detention likewise provide no concrete indication

---

[1] The "Declaration of Deportation Officer Arturo Rodriguez" (Dkt. No. 9-1) indicates that, on December 2, 2025, Petitioner was served with and signed an additional Form I-229(a) and instruction sheet. Dkt. No. 9-1 at 4.

[2] The Court acknowledges that some courts have construed an alien's own obstruction of removal to bear on whether he can show "good reason to believe" that removal is not significantly likely in the reasonably foreseeable future under the *Zadvydas* framework. See, e.g., *Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 711 (W.D. Tex. 2021); *Canhigh v. Bureau of Immigr. & Customs Enf't*, No. CV B-07-209, 2008 WL 11394315, at *4 (S.D. Tex. June 9, 2008), *report and recommendation adopted*, No. CV B-07-209, 2008 WL 11394269 (S.D. Tex. July 8, 2008). Respondents appear to invoke that distinct theory in arguing that Petitioner's failure to cooperate undermines his claim that continued detention under § 1231(a)(6) has become unreasonable. *See* Dkt. No. 9 at 4-6. But Respondents do not offer any legal authority to support that reading or show that it is Petitioner's conduct alone that has delayed an otherwise imminent removal. Cf. *Lightson v. Mukasey*, No. CIV.A H-07-2236, 2008 WL 8053472, at *2 (S.D. Tex. Mar. 6, 2008) (concluding that the petitioner's renunciation of Togolese citizenship shortly before scheduled deportation to Togo coupled with physical resistance resulting in ejection from the deportation flight warranted equitable tolling of the six-month period). The Court declines to toll "the removal period" on extra-statutory grounds where Respondents fail to adequately brief their proposed method of doing so.

that removal is forthcoming. Efforts to remove Petitioner to Cuba, his country of nationality, began July 23, 2025, and remain pending. Dkt. No. 9-1 at 3. Respondents have also pursued third-country removal to Mexico, but Mexico declined to accept Petitioner because of medical concerns. Dkt. No. 11 at 11; *see also* Dkt. No. 9-1 at 3. Thus, despite more than a year of renewed efforts following Petitioner's redetention, the record identifies neither an agreement by Cuba to accept him nor a viable third country willing to do so. These circumstances satisfy Petitioner's initial burden under *Zadvydas*.

The burden therefore shifts to Respondents to rebut that showing with sufficient evidence. *Zadvydas*, 533 U.S. at 701. Respondents have not done so. Respondents point to their "diligent[]" removal efforts and maintain that removal remains likely in the reasonably foreseeable future. Dkt. No. 9 at 6; Dkt. No. 10 at 1. But evidence of ongoing efforts is not, without more, evidence that those efforts are likely to succeed within a reasonably foreseeable period. Respondents identify no concrete development suggesting that Cuba or any third country will accept Petitioner. Because Respondents have not identified a viable path to removal despite Petitioner's detention for more than one year, they have not rebutted his showing that removal is not significantly likely in the reasonably foreseeable future. Continued detention has therefore ceased to bear the reasonable relationship to removal required by *Zadvydas*.

## IV. CONCLUSION

For these reasons, the Petition (Dkt. No. 1) is **GRANTED in part** and **DENIED in part**[3] as to any relief not expressly granted by this Order. Respondents are **ORDERED** to release Petitioner subject to appropriate conditions of supervision and to promptly file a status report confirming compliance with this Order. Respondents' MSJ (Dkt. No. 9) and Petitioner's MTRO (Dkt. No. 5) are further **DENIED as moot.**

Signed on this 7th day of October 2026.

Rolando Olvera
United States District Judge

[3] Because Petitioner is entitled to relief under *Zadvydas*, the Court does not reach the merits of his remaining claims.